## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| AMEER ALKAYALI, *et al.*,<br><br>    Plaintiffs,<br><br>  vs.<br><br>ERIC KALER, *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-00983<br><br>Judge Christopher Boyko<br><br><br>**Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss** |

      Plaintiffs Ameer Alkayali, Weilin Feng, and Kevin Kennelly, by and through undersigned counsel, hereby respond in opposition to Defendants' Motion to Dismiss [Doc. No. 11] (the "Motion"). As elaborated below, the Motion misrepresents the Complaint's factual allegations, fails to apply the proper standard for dismissal under Fed. R. Civ. P. 12, fails to establish the applicability of qualified immunity for any of the Defendants, and ultimately concludes (incorrectly) that the Complaint's allegations do not establish any violation of clearly established constitutional rights. Accordingly, the Motion should be denied in its entirety and the case allowed to proceed.

Respectfully Submitted,

*/s/ Peter Pattakos*
Peter Pattakos (0082884)
     peter@pattakoslaw.com
Gregory Gipson (0089340)
     ggipson@pattakoslaw.com
Zoran Balac (0100501)
     zbalac@pattakoslaw.com
Maryam Assar (0104229)
     massar@pattakoslaw.com

THE PATTAKOS LAW FIRM LLC
5324 Fleet Ave. 2d Floor
Cleveland, Ohio 44105
P: 330.836.8533 | F: 330.836.8536

*Attorneys for Plaintiffs*

# Table of Contents

Table of Authorities ................................................................................................................... ii

Statement of the Issues .............................................................................................................. v

I.     Introduction and Summary of the Argument .............................................................. 1

II.     Law and Argument ..................................................................................................... 4

     A.   Plaintiffs' allegations must be taken as true and all inferences therefrom must be construed in their favor ................................................................................................. 4

     B.   Plaintiffs have sufficiently pleaded a Fourth Amendment excessive force claim ............... 5

     C.   Plaintiffs have sufficiently pleaded a First Amendment Retaliation claim .......................... 8

        1.   Plaintiffs' presence at the Spirit Wall was unambiguously expressive conduct protesting the erasure of a political message. The First Amendment plainly protects against retaliation for such expressive conduct, regardless of where it occurred, and Defendants' arguments regarding private property and "traditional public forum" are a red herring .................................................................................................................. 9

        2.   Plaintiffs have sufficiently alleged facts to establish that Defendants were acting "under color of law" as officers of a private university's campus police department indisputably "act under color of law." ........................................................................... 11

        3.   Defendants' argument regarding causation fundamentally misrepresents the nature of Plaintiffs' claims, which focus on Defendants' decision to paint Plaintiffs as opposed to the Spirit Wall ........................................................................................... 12

     D.   Even without the First and Fourth Amendment, Plaintiffs' Complaint nevertheless states a substantive due process claim based on Defendants' conduct which "shocks the conscience." Plaintiffs should be permitted to amend their Complaint to expressly plead such a claim in the alternative ................................................................................ 13

     E.   Defendants are not entitled to qualified immunity as employees of a private entity ........ 15

     F.   Even if employees of a private entity were entitled to qualified immunity, Defendants are not entitled to qualified immunity here because the law that they are alleged to have violated was clearly established ................................................................................... 16

        1.   The right to be free from excessive force and violence generally by the police when engaged in peaceful, protected conduct and not resisting any police orders is clearly established ................................................................................................... 16

        2.   The First Amendment right to free from retaliation for political speech is clearly established ................................................................................................................ 18

III.     Conclusion .............................................................................................................. 20

## Table of Authorities

**Cases**

*Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs,* 637 F. Supp. 2d 561 (S.D. Ohio 2009) ........................... 18

*Alsaada v. City of Columbus,* 536 F. Supp. 3d 216 (S.D. Ohio 2021) ........................................................ 5

*Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011 ......................................... 17

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .............................................. 4

*Atkins v. Twp. of Flint,* 94 F. App'x 342 (6th Cir. 2004) ............................................................................. 17

*Bartell v. Lohiser,* 215 F.3d 550 (6th Cir. 2000) ......................................................................................... 11

*Bassett v. Nat'l Collegiate Ath. Ass'n,* 528 F.3d 426 (6th Cir. 2008) ......................................................... 4

*Bell v. Johnson,* 308 F.3d 594 (6th Cir. 2002) ............................................................................................. 8

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................. 4

*Bennett v. City of Eastpointe,* 410 F.3d 810 (6th Cir.2005) ......................................................................... 6

*Bloch v. Ribar,* 156 F.3d 673 (6th Cir. 1998) ......................................................................................... 19, 20

*Brown v. Louisiana,* 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966) ................................................... 9

*Brown v. Shaw,* E.D. Mich. No. 19-cv-12811 (Jan. 22, 2021) ................................................................... 17

*Burbridge v. City of St. Louis,* 2 F.4th 774, 782 (8th Cir. 2021) ................................................................. 10

*Campbell v. Mack,* 777 F.App'x 122 (6th Cir.2019) ................................................................................... 20

*Claybrook v. Birchwell,* 199 F.3d 350, 359 (6th Cir. 2000) ....................................................................... 15

*Cooperrider v. Woods,* 127 F.4th 1019 (6th Cir.2025) ............................................................................... 18

*Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 846-47 (1998)). ................................................................... 14

*Davidson v. Cannon,* 474 U.S. 344 (1986) ................................................................................................. 14

*Davidson v. Chestnut,* 193 F.3d 144 (2d Cir. 1999) ..................................................................................... 8

*DeShaney v. Winnebago Cnty. Dept. of Social Services,* 489 U.S. 189 (1989) .......................................... 14

*Diei v. Boyd,* 116 F 4th 637 (6th Cir. 2024) ............................................................................................... 19

*Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) ..................................................................................17

*Greene v. Barber*, 310 F.3d 889, 897-98 (6th Cir. 2002) ....................................................................20

*Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir. 2009)...............................................................................4

*Guertin v. State*, 912 F.3d 907 (6th Cir. 2019)....................................................................................14

*Handy-Clay v. City of Memphis*, 695 F.3d 531(6th Cir. 2021) ...........................................................14

*Howard v. Livingston Cty.*, 6th Cir. No. 21-1689, at *31 (Jan. 20, 2023) ...........................................14

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995)...............9

*Kent v. Oakland Cnty.*, 810 F.3d 384 (6th Cir. 2016) ..........................................................................17

*Irwin v. TVA*, E.D. Tenn. No. 3:12-cv-35, 2013 U.S. Dist. LEXIS 55140 (Apr. 17, 2013)...............4, 9

*Kijowski v. City of Niles*, 372 F. App'x 595 (6th Cir. 2010) ................................................................16

*LaPlante v. City of Battle Creek*, 30 F.4th 572 (6th Cir. 2022) ...........................................................17

*McCurdy v. Montgomery Cty.*, 240 F.3d 512, 516 (6th Cir. 2001) ......................................................20

*Mitchell v. McNeil*, 487 F.3d 374 (6th Cir.2007) ...............................................................................14

*Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667, 93 S. Ct. 1197, 35 L. Ed. 2d 618 (1973) .................................................................................................................................................19

*Parsons v. City of Ann Arbor*, 6th Cir. No. 22-1338 (May 12, 2023) .................................................17

*Pierce v. Bailey*, W.D.Mich. No. 1:22-cv-863 (Apr. 26, 2024) ..........................................................17

*Range v. Douglas*, 763 F.3d 573 (6th Cir. 2014)............................................................................14, 15

*Rescue Mental Health & Addiction Servs. v. Mental Health & Recovery Servs. Bd.*, N.D. Ohio No. 3:22 CV 640 (Feb. 8, 2023) ..............................................................................................................................19

*Richardson v. McKnight*, 521 U.S. 399, 117 S. Ct. 2100, 138 L. Ed.  2d 540 (1997)..................................16

*Roberts v. Cruz,* 6th Cir. No. 22-5687/5701 (Feb. 23, 2023)...............................................................17

*Smoak v. Hall*, 460 F.3d 768 (6th Cir. 2006) .....................................................................................17

*Spence v. Washington*, 418 U.S. 405, 94 S. Ct. 2727, 41 L. Ed. 2d 842 (1974) ..................................9

*Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478 (6th Cir. 2009) ..................................................4

*Texas v. Johnson*, 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) ...................................9

*Thompson v. Ohio State Univ.*, 990 F. Supp. 2d 801 (S.D. Ohio 2014) .......................................18

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) .................................................19

*Torres v. Madrid*, 592 U.S. 306 (2021) ...........................................................................2, 5–8

*Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220 (6th Cir. 1997) ...................................14

*Ward v. Polite*, 667 F. 3d 727 (6th Cir. 2021) ..........................................................................19

*Warman v. Mt. St. Joseph Univ.*, 144 F.4th 880 (6th Cir. 2025) ..........................................12, 15

*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015) ...................................................................16

*Westmoreland v. Sutherland*, 662 F.3d 714 (6th Cir. 2011) ......................................................8

*Wheeler v. Am. Univ.*, 619 F. Supp. 3d 1 (D.D.C. 2022) ..........................................................16

*Wood v. Eubanks*, 25 F.4th 414 (6th Cir. 2022) .........................................................................8

*Wyatt v. Cole*, 504 U.S. 158, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992) .................................16

*Zilich v. Longo*, 34 F.3d 359 (6th Cir. 1994) .............................................................................18

## Statutes and Rules

Fed. R. Civ. P. 12(b)(6) ....................................................................................................4, 16, 20

**Statement of the Issues**

1. Whether Plaintiffs have sufficiently pleaded a Fourth Amendment excessive-force claim where the allegations are that Defendants needlessly and wantonly coated Plaintiffs with spray paint after Plaintiffs refused to obey Defendants' orders to move away from a mural that Defendants wanted to paint over.

2. Whether Plaintiffs have sufficiently pleaded a First Amendment retaliation claim where the allegations are that Defendants' decision to coat Plaintiffs' with spray paint was taken in retaliation for Plaintiffs' participation in campus protests and their expressive conduct in standing in front of a mural containing a political message to prevent Defendants from painting over the message portrayed on the mural.

3. Whether Defendants can plausibly allege qualified immunity at this stage of the proceedings when private police forces with law enforcement authority do not enjoy a presumption of immunity and a factual record must be developed to support any such finding.

4. Whether the allegations of the Complaint establish, in the alternative, a substantive due process violation based on Defendants' unnecessary, gratuitous, and humiliating application of paint to human beings as punishment for speech and whether such conduct "shocks the conscience."

.

## I.  Introduction and Summary of the Argument

This case presents violations of Plaintiffs' First and Fourth Amendment rights. Plaintiffs—

students and community members—stood before Case Western Reserve University's Spirit Wall to

unambiguously express their objection to the erasure of a mural supporting the Palestinian people.

Instead of protecting or even tolerating this exercise of free expression, CWRU police officers,

acting under President Eric Kaler's directive to address campus "anti-semitism,"[1] permitted and

---

[1] While of secondary relevance here, Plaintiffs are unfortunately compelled to address Defendants' that Plaintiffs' allegations somehow contain an admission that the CWRU protesters were engaged in "anti-Semitic" conduct. At page 3 of their motion (PageID #: 66), Defendants cite ¶¶ 22–23 of the Complaint, in which Plaintiffs quote a May 7, 2024 statement by CWRU President Kaler, asserting that certain statements painted on the "Advocacy Wall" and "Spirit Wall" were "Anti-Semitic." It is plain from the Complaint that Plaintiffs are alleging that Kaler's accusations of Anti-Semitism, in this and every instance cited in the Complaint (*see also* ¶¶ 42–43), are false and wrongful. Defendants' effort to present these allegations as admissions by Plaintiffs, to be taken as true by this Court, that the protesters, including the Plaintiffs, were engaged or complicit in "threatening, intimidating, and anti-Semitic" conduct demonstrate nothing as much as Defendants' disregard for Rule 12's requirement that the Complaint's allegations are to be construed in Plaintiffs' favor. Likewise regarding Defendants' accusations that Plaintiffs "conveniently omitted" the language on a mural painted on CWRU's "Advocacy Wall"—stating "DISCLOSE, DIVEST, STUDENT LED INTIFADA," and "in dripping red paint," "YOU CAN'T HIDE"—and that this was "intimidating, harassing language." MTD p. 3–4 (PageID #: 66–67). These accusations have no bearing on whether Defendants were legally justified in spray-painting the Plaintiffs, and are especially irrelevant at this stage of the litigation wherein Plaintiffs' allegations must be accepted as true. To the extent the Court is inclined to pay any attention to these false, inflammatory, and inapposite accusations, Plaintiffs would only briefly note here that the language on this mural plainly refers to political opposition to Israel's military actions against Palestinians in Gaza and the West Bank that an increasing number of nations, global institutions, and their leaders—including The United Nations, Amnesty International, Doctors without Borders, and most recently, the International Association of Genocide Scholars, described by BBC as "the world's leading association of genocide scholars"—unequivocally characterize as genocidal. According to a study published more than a year ago in *The Lancet*, one of the world's oldest and most cited medical journals, "a conservative estimate of the death toll attributable to the current conflict in Gaza" was "up to 186,000 or more." Notwithstanding Defendants' xenophobic (at best) suggestion, the Arabic word "intifada" translates literally to "uprising" or "shaking off." That any human being, let alone campus protesters in the United States of America, would (a) oppose Israel's military actions and policies against Palestinians that leading scholars and institutions describe as genocidal, (b) call for an "uprising" against the genocidal army and occupation," "divestment" from corporations that support the genocide, or accountability for those who support it (*i.e.*, "you can't hide"), or (c) evoke the image of blood in speaking out against this widespread slaughter is hardly remarkable, and does not constitute "anti-Semitism," "harassment," or "intimidation" by any reasonable meaning of these terms. *See, e.g.*, Emir Nader, *BBC News*, "Israel committing genocide in Gaza, world's leading experts say," (Sept. 1, 2025) https://www.bbc.com/news/articles/cde3eyzdr63o ; Doctors

encouraged contractors to paint directly over Plaintiffs' bodies. This conduct deprived Plaintiffs of their Fourth Amendment right to be free from excessive force, as Courts in this Circuit have consistently held that the use of force—whether through pepper spray, tear gas, or other means—against peaceful protestors constitutes excessive force. Here, the application of paint to Plaintiffs' bodies, with police officers condoning the act, was force employed not for any legitimate law–enforcement purpose but as a tool of suppression. Defendants' conduct also violated Plaintiffs' clearly established First Amendment right to engage in political protest without retaliation, as the Constitution forbids both the silencing of protected speech and the use of force to punish political expression. Defendants' actions transgressed these core guarantees.

Defendants now seek dismissal of the claims against them through mischaracterization of the facts and misapplication of the law. The Complaint in this case, whose allegations and reasonable inferences therefrom must be accepted as true as this stage of the proceedings, sufficiently pleads violations of Plaintiffs' First and Fourth Amendment rights. In opposing Plaintiffs' excessive-force claim, Defendants misconstrue the holding of *Torres v. Madrid*, 592 U.S. 306 (2021), which does not limit Fourth Amendment claims only to cases where officers intend to restrain someone.

---

Without Borders, "Gaza death trap: MSF report exposes Israel's campaign of total destruction," (Dec. 19, 2024) https://www.doctorswithoutborders.org/latest/gaza-death-trap-msf-report-exposes-israels-campaign-total-destruction ; United Nations, "UN Special Committee finds Israel's warfare methods in Gaza consistent with genocide, including use of starvation as weapon of war," (Nov. 14, 2024) https://www.ohchr.org/en/press-releases/2024/11/un-special-committee-finds-israels-warfare-methods-gaza-consistent-genocide ; Amnesty International, "Amnesty International investigation concludes Israel is committing genocide against Palestinians in Gaza," (Dec. 5, 2024) https://www.amnesty.org/en/latest/news/2024/12/amnesty-international-concludes-israel-is-committing-genocide-against-palestinians-in-gaza/ ; Khatib, Rasha et al., "Counting the dead in Gaza: difficult but essential," *The Lancet*, Volume 404, Issue 10449, 237–238 (July 20, 2024), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(24)01169-3/fulltext ; S*ee also,* The Government and Republic of South Africa's Application Instituting Proceedings against Israel in The Hague, (filed Dec. 28, 2023) https://www.courthousenews.com/wp-content/uploads/2023/12/South-Africa-v-Israel.pdf

Defendants' opposition to Plaintiffs' First Amendment claim is equally flawed. First, the Motion fails to contend with the reality that Plaintiffs' presence at the Spirit Wall was plainly expressive conduct intended to convey a message that the First Amendment protects. The fact that Plaintiffs' demonstration occurred on private property is irrelevant because Plaintiffs' claim does not turn on any legitimate action that Defendants could have taken (but did not take) to remove them from CWRU's property. Additionally, Defendants' "causation" argument further misunderstands the nature of Plaintiffs' claim, which turns on the Defendants' decision to paint *them*, not the wall. In sum, Plaintiffs have indeed sufficiently pleaded numerous constitutional violations, and as a corollary, Defendants' arguments for dismissal of Plaintiffs' official-capacity claims against President Kaler and Chief Owens must fail as well.

The fundamental constitutional rights at issue in this case—to be free from excessive force and to be free from physical assault in retaliation for engaging in protected speech—are clearly established in the Sixth Circuit, which thus precludes application of qualified immunity for any Defendant. However, the qualified-immunity question need not even be reached since it is not clear at this stage of the proceedings that Defendants, as private individuals and agents of a private university, are entitled to a presumption of immunity at all.

Finally, even if the First and Fourth Amendments could be disregarded in this case, for all their efforts, Defendants succeed only in demonstrating that Plaintiffs' Complaint alleges facts that otherwise state a claim for violation of their substantive due process rights based on Defendants' conduct that  "shocks the conscience." Therefore, Plaintiffs should be permitted to amend their Complaint to include a substantive due process claim as an alternative to their excessive force and First Amendment retaliation claims in order to fully encompass the breadth and nature of the violations at issue in this case.

## II.  Law and Argument

### A.  Plaintiffs' allegations must be taken as true and all inferences therefrom must be construed in their favor.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555–56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Consequently, the examination of a complaint for a plausible claim for relief is undertaken in conjunction with the well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Here, Plaintiffs have alleged specific and detailed claims which suffice to meet applicable pleading standards and set forth facts which, as they must be at this stage of a pleading, taken as true, support every count and thus refute dismissal. Plaintiffs' Complaint establishes that Case

Western Reserve University (CWRU) President Eric Kaler, CWRU Police Chief Paul Owens, and CWRU Police officers Milo Drumm, Kurtis Bialosky, and Michael Jastatt, acted to spray Plaintiffs with paint in retaliation for their First Amendment-protected conduct related to ongoing campus protest and to disperse them from the scene. The unlawful nature of these acts is made even more evident when considering the allegations of Kaler's public statements, which not only demonstrate antipathy toward Plaintiffs' viewpoints but confirm the inappropriateness of the physical assault committed against Plaintiffs. (Compl. ¶¶ 40–48.) Of specific importance is Kaler's May 7, 2024 email in which he claimed to have been "disturbed" by the footage of the incident, expressed that he was "deeply sorry" for what had occurred, and criticized CWRU police officers for their "failure … to intervene." (Compl. ¶ 48.)

> **B.  Plaintiffs have sufficiently pleaded a Fourth Amendment excessive force claim.**

In opposing Plaintiffs' Fourth Amendment claim, Defendants' reliance on *Torres v. Madrid*, 592 U.S. 306 (2021) is misplaced. In that case, the Supreme Court merely agreed that the application of physical force is a seizure if the force hits the targeted individual but fails to stop the person. *Id.* at 311. Defendants attempt to draw from this case a different principle—namely, that no seizure ever occurs *unless* an officer manifests an intent to restrain the subject. (Mot. 7.) But this is not the holding of *Torres*, and Defendants' interpretation of *Torres* has been rejected by other courts in this Circuit. *See Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 260 (S.D. Ohio 2021). Moreover, the Court in *Torres* clarified that "[t]he rule we announce today is narrow" and that the Court explicitly noted that the justices "see no basis for drawing an artificial line between grasping with a hand and other means of applying physical force to effect an arrest." *Torres* at 316, 318.

Thus, contrary to Defendants' arguments, *Torres* does not defeat a seizure here. Moreover, controlling Sixth Circuit precedent recognizes that the application of force is sufficient for Fourth Amendment seizure whether it is used to *hold*, or to *disperse*. "Fourth Amendment jurisprudence

suggests a person is seized not only when a reasonable person would not feel free to leave an encounter with police, but also when a reasonable person would not feel free to remain somewhere, by virtue of some official action." *Bennett v. City of Eastpointe*, 410 F.3d 810, 834 (6th Cir.2005) (citing *Florida v. Bostick*, 501 U.S. 429, 439, 115 L. Ed. 2d 389, 111 S. Ct. 2382 (1991) (whether seizure occurred depends upon whether a reasonable person would believe he was "not free to decline the officers' requests or otherwise terminate the encounter"); *Evans v. Ball*, 168 F.3d 856, 861 (5th Cir. 1999) (collecting cases holding that pre-trial restriction on interstate travel is a seizure); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177-78 (7th Cir. 1994) (denial of freedom to remain in a place can be a seizure); *Beverlin v. Grimm*, 1995 U.S. Dist. LEXIS 11145, *8 n.1 (N.D.Ill. Aug. 4, 1995) ("We think the Terry rationale is applicable to unlawful interference with freedom of movement, whether it be exerted by preventing a person from leaving or forcing her to leave.")). Indeed, *Torres* was explicitly limited from application to cases to disperse by the D.C. Circuit, in *Ferris v. District of Columbia*, when that court determined that "*Torres* considered 'only force used to apprehend' and declined 'to opine on matters not presented here—pepper spray, flash-bang grenades, lasers, and more.' *Torres*, 141 S. Ct. at 998. That decision therefore 'did not address whether force used only to compel departure from an area constitutes a seizure.' *Dundon v. Kirchmeier*, 85 F.4th 1250, 1256 (8th Cir. 2023)." *Ferris*, D.D.C. No. 1:23-cv-481-RCL, at *27-28 (Dec. 15, 2023). *Bennett*, however, is clear, and has been since 2005, that application of force to disperse is as valid a Fourth Amendment seizure as application of force to detain. Therefore, Plaintiffs have adequately pleaded a Fourth Amendment seizure by alleging that the Officer Defendants, via their agents, applied force via paint to Plaintiffs in order to disperse their protest, and inherently used excessive force to do so, because Plaintiffs offered no resistance nor were they given any order to disperse prior to the deployment of force and were therefore not noncompliant.

Rather than warranting dismissal of Plaintiffs' Fourth Amendment claim, *Torres* actually supports their claim in that it held that "the application of physical force to the body of a person with intent to restrain is a seizure, even if the force does not succeed in subduing the person." *Torres*, 592 U.S. at 317. Thus, if officers (or those acting under their direction) intentionally apply physical force to a person in order to control their movement, a seizure occurs. That is precisely what happened here. Plaintiffs allege that, while they stood in front of the Spirit Wall in protest, university contractors—under the watch and tacit endorsement of CWRU police officers—applied paint directly to their bodies. Officers had foreknowledge that this would occur and even told Plaintiffs, "if they don't move, it's on them," thereby making clear that the application of paint was being used as a tool of compulsion. Such conduct is no different in principle from the use of pepper spray, tear gas, or rubber bullets against protestors—methods courts have repeatedly recognized as seizures effected through excessive force.

Defendants argue that *Torres* requires an intent to restrain in the custodial sense, and that the purpose here was dispersal rather than detention. But that argument misreads *Torres*. The Court made clear that a seizure occurs whenever force is applied "with the intent to restrain," regardless of whether the person submits or is taken into custody. *Id.* at 317–18. The "restraint" here was the forcible prevention of plaintiffs from maintaining their protest position at the Spirit Wall. Painting over their bodies was intended to drive them away, to coerce them into abandoning their protest. That is an exercise of control over movement, and thus a seizure under *Torres*.

Nor was the application of paint accidental. Unlike incidental contact, the Officer Defendants anticipated and sanctioned the use of paint on plaintiffs' bodies as a means to compel them to move. The force was therefore intentional, coercive, and plainly aimed at restricting plaintiffs' liberty of movement.

Accordingly, under *Torres*, plaintiffs have alleged a textbook Fourth Amendment seizure carried out through excessive and unreasonable force.

### C. Plaintiffs have sufficiently pleaded a First Amendment Retaliation claim.

To prevail on a First Amendment retaliation claim, Plaintiff must demonstrate that three elements are met: (1) "that he engaged in constitutionally protected speech," (2) "that he suffered an adverse action likely to chill a person of ordinary firmness from continuing to engage in protected speech," and (3) "that the protected speech was a substantial or motivating factor in the decision to take the adverse action." *Wood v. Eubanks*, 25 F.4th 414, 428-29 (6th Cir. 2022) (quoting *Westmoreland v. Sutherland*, 662 F.3d 714, 718 (6th Cir. 2011)). In this case, Plaintiffs pleaded facts to establish all three elements. Plaintiffs' First-Amendment-protected speech is set forth in paragraph 63 of the Complaint, as well as Paragraphs 23-26 and 29-35, where Plaintiffs are broadly alleged to have acted to prevent the erasure of First-Amendment protected speech on the Spirit Wall only, by the expressive conduct of standing in front of the painters. Moreover, Plaintiffs submit that a person of ordinary firmness would be deterred from exercising their First Amendment right to criticize public and governmental figures if such person knew that the criticized police officers could or would, in retaliation for such speech, instruct or ratify the attack of that person with paint of unknown composition and toxicity with uncertain effect. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citing *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (noting that question of whether one-day denial of inmate's exercise opportunities was de minimis was "factual in nature")). If there is even a question of fact as to whether the allegations rise to the level of chilling a person of ordinary firmness from continuing to engage in protected speech, that question must be resolved in favor of Plaintiffs at the pleading stage. Finally, Plaintiffs expressly allege that Defendants' actions were motivated by a desire to punish Plaintiffs for exercising their First Amendment right to criticize political policy and figures. (Compl. ¶ 63.)

1. **Plaintiffs' presence at the Spirit Wall was unambiguously intended as expressive conduct protesting the erasure of a political message. The First Amendment plainly protects against retaliation for such expressive conduct, regardless of where it occurred, and Defendants' arguments regarding private property and "traditional public forum" are a red herring.**

Plaintiffs did not speak, but nevertheless clearly expressed political viewpoints which are protected by the First Amendment. "Although the First Amendment does not protect pure conduct, it does protect expressive conduct (sometimes referred to as symbolic speech). Conduct may be protected if it "was sufficiently imbued with elements of communication." *Irwin v. TVA*, E.D. Tenn. No. 3:12-cv-35, 2013 U.S. Dist. LEXIS 55140, *11 (Apr. 17, 2013) (quoting *Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989) (quoting in turn *Spence v. Washington*, 418 U.S. 405, 409, 94 S. Ct. 2727, 41 L. Ed. 2d 842 (1974) (per curiam)). Furthermore, while the conduct must express some message beyond the acts themselves, this is a low bar: "[t]he threshold [for establishing a particularized message] is not a difficult one, as 'a narrow, succinctly articulable message is not a condition of constitutional protection."' *Irwin* at *12. (quoting *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 569, 115 S. Ct. 2338, 132 L. Ed. 2d 487 (1995). 'Otherwise, the First Amendment 'would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll.'" *Irwin* at *12.

Context is crucial in analyzing expressive conduct. *Spence* at 410. However, there is no "rule" or requirement that expression must be anything but comprehensible as such. "As this Court has repeatedly stated, these rights are not confined to verbal expression. They embrace appropriate types of action which certainly include the right in a peaceable and orderly manner to protest by silent and reproachful presence[.]" *Brown v. Louisiana*, 383 U.S. 131, 141-142, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966). Plaintiffs have explicitly pled that they stood in front of the wall to protest its censorship by CWRU Officer Defendants through their agents, Painters, and on the orders or instructions of

Owens and/or Kaler. They did not speak, but they stood, without any threat or other action, in the space between paint sprayer and wall, and Officers Jastatt, Drumm, and Bialowsky clearly understood them to be protecting the Spirit Wall from erasure. (Compl. ¶¶ 30, 63.)

Instead of recognizing the obvious political message intended by Plaintiffs' expressive conduct and their inappropriate response to it, Defendants mischaracterize Plaintiffs' claim as a challenge to Case Western Reserve University's authority to control access to its private property. That is not this case. Plaintiffs do not allege that CWRU was constitutionally prohibited from removing them from the Spirit Wall area. What Plaintiffs allege—and what the First Amendment squarely forbids—is that state actors may not subject individuals to retaliatory physical assault because of the content of their political speech.

First, the location of Plaintiffs' protest does not insulate Defendants from First Amendment scrutiny. While the forum analysis determines whether the University was required to permit expressive activity on its property, the retaliation doctrine addresses a different question: whether government officials punished citizens for engaging in speech. Once CWRU police officers—acting under color of state law—chose to respond to Plaintiffs' protest not with neutral enforcement but by allowing and endorsing paint being applied to their bodies, the First Amendment is triggered.

Second, Plaintiffs' claim is not that they had a right to remain on CWRU's property indefinitely. Plaintiffs could have been lawfully ordered to leave. But what Defendants did instead was sanction the use of force against them because of their message. There is a sharp distinction between removal from property and punishment for speech, and while government actors may enforce trespass rules, they may not employ physical assault as retaliation for disfavored political views. *See Burbridge v. City of St. Louis*, 2 F.4th 774, 782 (8th Cir. 2021) (finding use of excessive force could provide basis for First Amendment retaliation claim).

Third, Defendants' position would lead to absurd results. By their logic, police officers would be free to pepper spray or beat protestors on private property so long as the protestors technically lacked a right to be there. That is not the law. The First Amendment prohibits government officials from retaliating against political protest through force, regardless of whether the protest occurs on a public street or in front of a privately owned campus wall.

Finally, Plaintiffs' allegations demonstrate precisely the kind of viewpoint-based retaliation the First Amendment forbids. The officers' conduct was not aimed at neutral property management; it was targeted at Plaintiffs' pro-Palestinian protest. By standing by while paint was intentionally applied to Plaintiffs' bodies, Defendants punished them for their message. That is retaliation in its purest form.

In sum, the question is not whether CWRU could lawfully remove Plaintiffs from private property, but whether Defendants could use physical force against them in retaliation for their political expression. The First Amendment answers that question unequivocally: they could not.

### 2. Plaintiffs have sufficiently alleged facts to establish that Defendants were acting "under color of law" as officers of a private university's campus police department indisputably "act under color of law."

Defendants further argue that to sustain their First Amendment retaliation claim, Plaintiffs must show that Defendants "stood 'in the shoes of the state' in its operation of the area in front of the Spirit Wall." (Mot. 9.) Again, as discussed above, the location of where Plaintiffs expressed their First Amendment protected views is irrelevant to this case since the adverse action taken against them was not mere removal from private property but rather the use of physical violence and humiliation as retaliation for political speech. But, in any case, it is well established in this Circuit that officers of a private university's campus police department act under the color of state law for purposes of section 1983 claims. *See, e.g.*, *Bartell v. Lohiser*, 215 F.3d 550, 556 (6th Cir. 2000) ("It is well settled that private parties that perform fundamentally public functions . . . are regarded as

acting 'under the color of state law' for purposes of § 1983."); *Warman v. Mt. St. Joseph Univ.*, 144 F.4th 880 (6th Cir.2025) ("[E]ven as officers of a private university's campus police department, Koopman and Koo acted under color of state law and are therefore subject to § 1983 liability.")

Here, there is no dispute that the Complaint establishes that the Officer Defendants, acting under policies set forth by the other Defendants, were at all relevant times acting under color of state law.

### 3. Defendants' argument regarding causation fundamentally misrepresents the nature of Plaintiffs' claims, which focus on Defendants' decision to paint Plaintiffs as opposed to the Spirit Wall.

Defendants contend that Plaintiffs cannot establish causation because the University had already decided to paint over the Spirit Wall before Plaintiffs arrived to protest the repainting. This argument fundamentally misstates the nature of Plaintiffs' claim. Plaintiffs do not challenge the University's decision to paint over the wall. They challenge Defendants' decision to paint over *them*.

First, the adverse action at issue is the physical application of paint to Plaintiffs' bodies—not the covering of the mural. Plaintiffs' allegations make clear that when they stood in front of the Spirit Wall, Defendants, acting through university police and contracted painters, intentionally permitted and sanctioned paint being applied to their bodies as a means of compelling them to abandon their protest. That conduct was directed at Plaintiffs because of their expressive activity— standing in peaceful opposition to the erasure of pro-Palestinian speech. The fact that Defendants had independently chosen to remove the mural hours earlier is irrelevant. The retaliatory act was the decision to use physical force against Plaintiffs in response to their protected protest.

Second, the causal connection between Plaintiffs' protected activity and Defendants' adverse action is evident from the sequence of events. Plaintiffs were warned that if they did not move, "they're gonna get paint on 'em." The application of paint occurred only because Plaintiffs engaged in protest activity by physically positioning themselves at the wall. But for that expressive activity,

Defendants would not have painted over them. ***This*** is the causation alleged in the Complaint and required for First Amendment retaliation claims.

Third, Defendants' framing would effectively insulate nearly all retaliatory force against protestors so long as some governmental decision preceded the protest. Under their theory, police could deploy pepper spray or rubber bullets against demonstrators and escape liability merely because the government had earlier decided to clear an area. That is not the law. The First Amendment protects citizens from being punished for their speech, regardless of whether the government had independent plans to act in the background.

Finally, the Complaint plausibly alleges retaliatory motive. The officers' warnings, their refusal to intervene, and the contractors' actions taken in police presence support the inference that Defendants intentionally used the painting process to target Plaintiffs for their protest. Whether framed as allowing, directing, or tacitly endorsing the paint being applied to Plaintiffs, the inference is the same: Defendants' adverse action was motivated by Plaintiffs' expressive conduct, not simply by a preexisting plan to repaint a wall.

In short, Defendants' causation argument collapses by focusing on the wrong adverse action. The fact that the University decided in advance to paint over a wall does not negate Plaintiffs' claim. What matters is that Defendants chose to paint over the Plaintiffs themselves because of their protest. That retaliatory act is sufficient to establish causation under the First Amendment.

**D. Even without the First and Fourth Amendment, Plaintiffs' Complaint nevertheless states a substantive due process claim based on Defendants' conduct which "shocks the conscience." Plaintiffs should be permitted to amend their Complaint to expressly plead such a claim in the alternative.**

Even if the Court were to conclude that Plaintiffs' allegations do not fit neatly within the First or Fourth Amendments, Defendants' conduct independently violates the substantive due process guarantee of the Fourteenth Amendment. "To state a cognizable substantive due process claim, the plaintiff must allege "that an individual has been deprived of a particular constitutional

guarantee, or [] that the government has acted in a way that 'shock[s] the conscience.'" *Howard v. Livingston Cty.*, 6th Cir. No. 21-1689, at *31 (Jan. 20, 2023) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2021) (citing in turn *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)). Allegations of "conduct intended to injure in some way unjustifiable by any government interest and that is conscience-shocking in nature" are sufficient. *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir.2007).

Substantive due process protects "liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). It specifically embraces "the right not to be subjected to arbitrary and capricious government action that 'shocks the conscience and violates the decencies of civilized conduct.'" *Id.* (emphasis added) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)). Importantly, "the Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" *DeShaney v. Winnebago Cnty. Dept. of Social Services*, 489 U.S. 189, 196 (1989) (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)). Applying these principles, it is plain that Defendants' actions certainly "shock the conscience."

First, Defendants' use of force served no legitimate governmental purpose. "[A] purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Lewis*, 523 U.S. at 836 (emphasis added); *see also Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014) ("[C]onduct . . . which is 'intended to injure' without any justifiable government interest, most clearly rises to the 'conscience-shocking' level." (quoting *Lewis*, 523 U.S. at 848-49)). Here, Plaintiffs were engaged in peaceful political protest. The Constitution permits officials to remove protestors from private property, but it does

14

not permit them to sanction or orchestrate physical assault—here, the deliberate painting over of human beings—as punishment for their speech.

Second, where "agent(s) are afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action . . . their actions will be deemed conscience-shocking if they were taken with 'deliberate indifference' towards plaintiff's federally protected rights." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (citing *Lewis*, 523 U.S. at 851). The Sixth Circuit "identifie[s] several considerations that bear on the question of whether deliberate indifference amounts to conscience-shocking behavior: 1) the voluntariness of the plaintiff's relationship with the government, 2) whether there was time for the government actor to deliberate, and 3) whether the government actor was pursuing a legitimate governmental purpose." *Range*, 763 F.3d at 590. Here, the Officer Defendants could have removed Plaintiffs or charged them with trespass. Instead, they sanctioned the use of force employed as a calculated act of humiliation designed to harm Plaintiffs or otherwise silence or punish their particular political message. Moreover, there was ample time for Defendants to deliberate as to how to proceed. There was no pressing emergency requiring immediate painting of the Spirit Wall.

In sum, Defendants' actions were arbitrary, abusive, degrading, and targeted at silencing protected speech. That combination of intent, humiliation, and lack of legitimate purpose is precisely what the "shocks the conscience" doctrine is designed to prohibit. Plaintiffs have therefore stated a viable substantive due-process claim in addition to their First and Fourth Amendment claims and should be permitted to amend their Complaint to expressly state such a claim.

### E.  Defendants are not entitled to qualified immunity as employees of a private entity.

As discussed above, the Officer Defendants indisputably acted under color of law as uniformed, Ohio peace officers working for a private university. However, their private employment calls into question whether they can claim qualified immunity at all. *See Warman* at 22 (quoting

*Richardson v. McKnight*, 521 U.S. 399, 403, 117 S. Ct. 2100, 138 L. Ed. 2d 540 (1997) (quoting in turn *Wyatt v. Cole*, 504 U.S. 158, 164, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992)) ("As a threshold issue, it is unclear whether Koopman and Koo are entitled to raise a qualified immunity defense as privately employed campus police officers."). "Therefore, as other federal courts have observed, 'the question [of] whether university-employed [] police can even assert qualified immunity is a complicated one.'" *Id.* at 24 (quoting *Wheeler v. Am. Univ.*, 619 F. Supp. 3d 1, 22 (D.D.C. 2022)).

Given that whether qualified immunity applies in these circumstances is an open question rather than settled law, it should come as no surprise, therefore, that the means of determining the issue is through a "framework. . .offered by the Supreme Court in *Richardson* and *Filarsky* [that] demands a fact-intensive analysis." *Id.* at 24 (internal quotations and citations removed).

Moreover, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity [and] [a]lthough an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-434 (6th Cir.2015) (internal quotations and citations omitted). Having a factual record is key to making a determination regarding immunity, and such a record will be ample at summary judgment while it is, of course, not here.

### F. Even if employees of a private entity were entitled to qualified immunity, Defendants are not entitled to qualified immunity here because the law that they are alleged to have violated was clearly established.

#### 1. The right to be free from excessive force and violence generally by the police when engaged in peaceful, protected conduct and not resisting any police orders is clearly established.

"[T]he right to be free from physical force when one is not resisting the police is a clearly established right." *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010). Indeed, "[a]n officer has used excessive force when he pepper sprays a suspect who has not been told she is under

arrest and is not resisting arrest." *Gravey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009) (citing *Atkins v. Twp. of Flint,* 94 F. App'x 342, 349 (6th Cir. 2004)). The right to be free from excessive force is and has been clearly established. But whether force is "excessive" depends on the particular context." *Roberts v. Cruz,* 6th Cir. No. 22-5687/5701, * 9 (Feb. 23, 2023) (internal citation omitted).

"A police officer violates a clearly established right when, at the time of his challenged conduct, 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Parsons v. City of Ann Arbor*, 6th Cir. No. 22-1338, at *5 (May 12, 2023) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). Indeed, "takedown maneuvers are excessive when officers deal with a 'generally compliant' suspect, and. . .the police may not use physical force against a subdued, non-resisting subject.'." *Parsons.* at *6 (citing *LaPlante v. City of Battle Creek*, 30 F.4th 572, 583 (6th Cir. 2022) (citing in turn *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006)). A prohibition against the use of force on a non-resisting subject is a clearly established right. Similarly, "the Sixth Circuit has held that the right to be free from excessive force is a clearly established right for purposes of the qualified immunity analysis." *Brown v. Shaw*, E.D. Mich. No. 19-cv-12811, at *9-10 (Jan. 22, 2021). Generally, police use of certain types of chemical agents against citizens is not *per se* unreasonable and excessive: "As with other uses of force, reasonableness is highly fact specific. [Generally], when a suspect actively resists detainment or is non-compliant, a police officer does not violate the Fourth Amendment by employing reasonable force, such as pepper spray or a taser." *Pierce v. Bailey*, W.D.Mich. No. 1:22-cv-863, at *10 (Apr. 26, 2024). However, "it is well established that use of force on a suspect who is restrained, cooperative, and/or no longer resisting amounts to excessive force." *Id.* at *11. "Active resistance includes physically struggling with, threatening, or disobeying officers." *Id. (*quoting *Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2016)). Plaintiffs were not struggling with, threatening, or overtly disobeying officers, but were merely standing still and silent.

17

In this matter Plaintiffs have explicitly pleaded a clearly established right to be free from excessive force by police officers. (Compl. ¶ 57–58.) Plaintiffs were unresisting, not violent, and standing still. In response, Officer Defendants explicitly authorized and ratified a physical attack against Plaintiffs with paint, which served no purpose other than to humiliate and physically harm Plaintiffs. Although Defendants seek to characterize the actions of the Officer Defendants as "'declin[ing] to move the Plaintiffs'" this ignores the clearly pled allegations that Officers instructed and/or ratified the use of physical force by Painter agents against Plaintiffs for their protest. (*Id.*) Plaintiffs have clearly alleged that the statements "if they don't move it's on them" and "we're just advising them they're going to get paint on them. . .we're just here" were not factual observations but means of communicating their ultimatum to Plaintiffs while appearing above the fray. (Compl. ¶¶ 33–34 , 37, 57–58.) This use of force against unresisting individuals who made no threats, and specifically the use of chemical sprays not designed for use on human bodies—industrial spray-paint in this case—was excessive force and clearly violated Plaintiffs' Fourth Amended constitutional rights, as any reasonable and adequately trained police officer would have known.

### 2. The First Amendment right to free from retaliation for political speech is clearly established.

Plaintiffs' First Amendment rights in this case have been equally clearly established in this Circuit. "The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional." *Cooperrider v. Woods*, 127 F.4th 1019, 1040 (6th Cir.2025) (quoting *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994)). More specifically, "'it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983.'"); *see also Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs,* 637 F. Supp. 2d 561, 584 (S.D. Ohio 2009) (social worker "should have known that fabricating evidence against a mother to punish her from complaining about an FCCS investigation" violated First Amendment rights); *Thompson v. Ohio State Univ.*, 990 F. Supp. 2d 801, 812 (S.D. Ohio 2014) (no

qualified immunity for a university official who "retaliated against [p]laintiff for exercising her First Amendment right to complain about perceived race discrimination by Dr. Schweikhart in the Master's program."); *Rescue Mental Health & Addiction Servs. v. Mental Health & Recovery Servs. Bd.*, N.D.Ohio No. 3:22 CV 640, at *39-40 (Feb. 8, 2023); *Bloch v. Ribar*, 156 F.3d 673, 679 (6th Cir. 1998) ("[T]here is no justification for harassing people for exercising their constitutional rights....").

Universities in particular have very well-drawn parameters concerning when and how they may regulate speech. In *Diei v. Boyd,* 116 F 4th 637 (6th Cir. 2024) the court noted the plaintiff's extensive survey of applicable case law to support her claim of retaliation. First, the court noted, the Supreme Court has "'ma[de] it clear' that universities cannot rely on 'conventions of decency' alone to stifle protected speech." *Diei* at 649 (quoting *Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667, 93 S. Ct. 1197, 35 L. Ed. 2d 618 (1973) (per curiam)). "[I]n the absence of any disruption of campus order or interference with the rights of others, the Supreme Court explained, a university cannot proscribe speech based on its content—no matter how offensive to good taste the speech may be. The First Amendment, the Supreme Court observed, leaves no room for the operation of a dual standard in the academic community with respect to the content of speech." *Id.* at 649 (internal quotations and citations omitted). Referring to the circuit's prior ruling in *Ward v. Polite*, 667 F. 3d 727 (6th Cir. 2021), the *Diei* court went on to forcefully articulate the standards for restriction of student speech: "if student speech is unrelated to 'the curriculum and school-sponsored activities,' and suppression of the speech does not 'further a "legitimate pedagogical concern[]," then the First Amendment only 'permits suppression' of the speech when it 'causes "substantial disruption of or material interference with school activities." *Id.* (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 514 (1969)). Concluding that a reasonable jury could find that 'hostility' to the plaintiff's religious speech, not a legitimate pedagogical purpose, was the cause of the plaintiff's expulsion, we reversed." *Diei* at 649 (quoting *Ward*). "Hostility to the Plaintiffs'

speech" is exactly what Plaintiffs pleaded as the reason for – and intent behind – the Defendants' efforts to censor both the Spirit Wall itself and, more pertinently, the First Amendment expression of Plaintiffs as they stood before the Spirit Wall to protest its effacement.

Courts look to the retaliatory intent of the actors in such claims: "'the courts that have considered qualified immunity in the context of a retaliation claim have focused on the retaliatory intent of the defendant' rather than on the retaliatory action the defendant allegedly undertook. *Campbell v. Mack*, 777 F.App'x 122, 136 (6th Cir.2019) (quoting *Bloch v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998)). Courts have denied immunity for officers who retaliated by arresting citizens for using derogatory names to refer to the officer, and for protesting and refusing orders to return home. *Id.* at 136 (citing *Greene v. Barber,* 310 F.3d 889, 897-98 (6th Cir. 2002) and *McCurdy v. Montgomery Cty.*, 240 F.3d 512, 516 (6th Cir. 2001), respectively). Plaintiffs here have explicitly alleged that the intent of Officer Defendants and Kaler and Owens was "to punish Plaintiffs for exercising their First Amendment rights" by protesting against the painting of the wall. (Compl. ¶ 64.) This is not a vague or difficult question, and no reasonable police officer could be unaware that chilling First Amendment activity is a violation of a clearly established right.

## III.    Conclusion

Applying Rule 12(b)'s standards, Plaintiffs have sufficiently pleaded First Amendment retaliation and Fourth Amendment excessive force claims, and the record is insufficient to establish any qualified immunity defense for any Defendant at this stage of the proceedings. Thus, dismissal of Plaintiffs' Complaint under Rule 12(b) is neither appropriate nor warranted. However, even if the First or Fourth Amendment were not implicated in this case, the Court must recognize that the pleaded allegations nevertheless demonstrate conscience-shocking conduct by Defendant that gives rise to a claim for violation of Plaintiffs' substantive due process right, and the Court should, in the alternative, permit Plaintiffs to amend their Complaint accordingly.

Respectfully Submitted,

/s/ Peter Pattakos
Peter Pattakos (0082884)
    peter@pattakoslaw.com
Gregory Gipson (0089340)
    ggipson@pattakoslaw.com
Zoran Balac (0100501)
    zbalac@pattakoslaw.com
Maryam Assar (0104229)
    massar@pattakoslaw.com

THE PATTAKOS LAW FIRM LLC
5324 Fleet Ave. 2d Floor
Cleveland Ohio 44105
P: 330.836.8533/F: 330.836.8536

*Attorneys for Plaintiffs*

## Page Limit Certification

Pursuant to Local Rule 7.1(f), I certify that this memorandum adheres to the 20-page limitation for unassigned cases.

/s/ Peter Pattakos
*Attorney for Plaintiffs*

## Certificate of Service

The foregoing document was e-filed on September 5, 2025, using the Court's CM/ECF system, which will serve copies on all necessary parties.

/s/ Peter Pattakos
*Attorney for Plaintiffs*