**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMEER ALKAYALI, et al.,** | : | Case No. 1:25-cv-983 |
| | : | |
| Plaintiffs, | : | Judge Christopher A. Boyko |
| | : | |
| v. | : | Magistrate Judge James E. Grimes, Jr. |
| | : | |
| **ERIC KALER, et al.,** | : | **REPLY IN SUPPORT OF** |
| | : | **DEFENDANTS' MOTION TO DISMISS** |
| Defendants. | : | |

Carole S. Rendon (0070345)
Karl Fanter (0075686)
Douglas L. Shively (0094065)
Matthew C. Borcas (103760)
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: 216.621.0200
Facsimile: 216.696.0740
crendon@bakerlaw.com
kfanter@bakerlaw.com
dshively@bakerlaw.com
mborcas@bakerlaw.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

LAW AND ARGUMENT ..........................................................................................2

A. Plaintiffs' Response Confirms That Defendants Are Entitled to Qualified Immunity. .......................................................................................2

B. Plaintiffs Misrepresent Defendants' Arguments and the Law Regarding the Fourth Amendment, Underscoring Their Failure to Plausibly Allege a Seizure. .......................................................................................7

C. Plaintiffs' First Amendment Retaliation Claim Is Defective. ..........................10

D. Qualified Immunity Would Defeat Plaintiffs' Proposed Substantive Due Process Claim, Making It Futile. ..........................................................12

CONCLUSION .......................................................................................................13

PAGE-LIMIT CERTIFICATION ............................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)....................3, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2, 3

*Bell v. City of Southfield*,
37 F.4th 362 (6th Cir. 2022)....................4

*Bennett v. City of Eastpointe*,
410 F.3d 810 (6th Cir. 2005)....................7, 8, 9

*Burbridge v. City of St. Louis*,
2 F.4th 774 (8th Cir. 2021)....................6

*Campbell v. Cheatham Cty. Sheriff's Dep't*,
47 F.4th 468 (6th Cir. 2022)....................7

*Chaney-Snell v. Young*,
98 F.4th 699 (6th Cir. 2024)....................6

*Chavez v. United States*,
683 F.3d 1102 (9th Cir. 2012)....................2

*City of Sacramento v. Lewis*,
523 U.S. 833 (1998)....................12

*Crawford v. Tilley*,
15 F.4th 752 (6th Cir. 2021)....................3

*Dundon v. Kirchmeier*,
85 F.4th 1250 (8th Cir. 2023)....................9

*Ellsworth v. City of Lansing*,
2000 WL 191836 (6th Cir. Feb. 10, 2000)....................11

*Ferris v. District of Columbia*,
2023 WL 8697854 (D.D.C. 2023)....................9

*Franz v. Oxford Cmty. Sch. Dist.*,
132 F.4th 447 (6th Cir. 2025)....................6, 12

*Guertin v. Michigan*,
912 F.3d 907 (6th Cir. 2019) ....................12

*Hall v. Navarre*,
118 F.4th 749 (6th Cir. 2024) ....................10, 11

*Hoskins v. Withers*,
92 F.4th 1279 (10th Cir. 2024) ....................5

*Kuyat v. BioMimetic Therapeutics, Inc.*,
747 F.3d 435 (6th Cir. 2014) ....................1, 13

*Manhattan Cmty. Access Corp. v. Halleck*,
587 U.S. 802 (2019) ....................11

*McElhaney v. Williams*,
81 F.4th 550 (6th Cir. 2023) ....................11

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) ....................3

*Mullenix v. Luna*,
577 U.S. 7 (2015) ....................4

*Puente v. City of Phoenix*,
123 F.4th 1035 (9th Cir. 2024) ....................8

*Reform America v. City of Detroit*,
37 F.4th 1138 (6th Cir. 2022) ....................10, 11

*Reno v. Flores*,
507 U.S. 292 (1993) ....................13

*Schulkers v. Kammer*,
955 F.3d 520 (6th Cir. 2020) ....................6

*Sevy v. Barach*,
815 F. App'x 58 (6th Cir. 2020) ....................5, 6

*Sterling Hotels, LLC v. McKay*,
71 F.4th 463 (6th Cir. 2023) ....................3

*Torres v. Madrid*,
592 U.S. 306 (2021) ....................7, 8

*United Pet Supply, Inc. v. City of Chattanooga*,
768 F.3d 464 (6th Cir. 2014) ....................2, 3

*Warman v. Mount St. Joseph Univ.*,
144 F.4th 880 (6th Cir. 2025) ....................2

*Wesley v. Campbell*,
779 F.3d 421 (6th Cir. 2015) ....................3

*Wheeler v. American Univ.*,
619 F. Supp. 3d 1 (D.D.C. 2022) ....................2, 3

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................3

## INTRODUCTION

Plaintiffs do not identify binding precedent clearly establishing the unconstitutional nature of defendants' alleged conduct. As it relates to the Spirit Wall painting incident, that alleged conduct is as follows:

- **Officers Drumm, Bialosky, and Jastatt:** "[D]eclining to" "move the Plaintiffs" from their position in front of the Spirit Wall (Compl. ¶ 32); "advising" plaintiffs to "move" so that they would not "get paint" on their bodies (*id.* ¶ 33 (Officer Drumm only)); "supervisi[ng] and authoriz[ing]" the painting (*id.* ¶ 35).

- **President Kaler and Chief Owens:** Providing "instructions on how to proceed" to the officer defendants "over radio or phone." (Compl. ¶ 31.)

None of this comes close to a clearly established Fourth Amendment, First Amendment, or Fourteenth Amendment[1] violation. Plaintiffs confirm this conclusion by failing to cite a single case—let alone a binding case—in which similar conduct was held unconstitutional.

Accordingly, defendants are entitled to qualified immunity on this straightforward basis, and the Court need not address whether plaintiffs have stated an excessive force claim under the Fourth Amendment or a retaliation claim under the First Amendment.

On the substance of their claims, plaintiffs' arguments fare no better. Plaintiffs refuse to commit to a "seizure by force" or a "seizure by control" Fourth Amendment theory—making clear that their allegations fit neither category. Nor do plaintiffs attempt to explain how the First Amendment protected their right to engage in a protest—or to "prevent" and "block" painting operations (*id.* ¶¶ 4, 30)—on CWRU's private property. The Court should dismiss plaintiffs' complaint for these additional reasons.

---

[1] Plaintiffs did not assert a Fourteenth Amendment claim, but they proposed adding one in their opposition brief. Such a request is improper without attaching a proposed amended complaint, *see Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014), and, as explained below, any such amendment would be futile.

## LAW AND ARGUMENT

### A. Plaintiffs' Response Confirms That Defendants Are Entitled to Qualified Immunity.

Plaintiffs make four missteps on qualified immunity—underscoring its propriety here.

***First***, plaintiffs claim that defendants' "private employment calls into question whether they can claim qualified immunity at all." (Opp. at PageID 106.) But, tellingly, plaintiffs make no attempt to analyze this question. Instead, they call it "complicated" and "open" and, in essence, ask the Court to ignore it. (*Id.* at PageID 107.)[2]

But as explained in defendants' motion, the great weight of authority demonstrates that privately employed police officers (and their supervisors) are entitled to assert qualified immunity. *See, e.g.*, *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 479 (6th Cir. 2014) (permitting privately employed police officers to assert qualified immunity); *Wheeler v. American Univ.*, 619 F. Supp. 3d 1, 22–24 (D.D.C. 2022) (permitting private university's police officers to assert qualified immunity based on applicable Supreme Court precedent and the Sixth Circuit's analysis in *United Pet Supply*); *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012) ("*Iqbal* requires courts to apply an equivalent standard to supervisors and subordinates" for "qualified immunity").

Plaintiffs ignore these cases. Moreover, they fail to identify a single case in which a court has held that a privately employed police officer (or the officer's supervisor) was barred from claiming qualified immunity.

[2] Plaintiffs cite *Warman v. Mount St. Joseph Univ.*, 144 F.4th 880, 895 (6th Cir. 2025), for the proposition that this question is "complicated." (Opp. at PageID 106–07.) In *Warman*, however, the Sixth Circuit declined to address this question because "neither side meaningfully engage[d] with" it in their briefing—a situation not present here. *Id.* at 895–96.

Again, plaintiffs' own allegations show that defendants may assert qualified immunity under the framework established by the Supreme Court and applied in *United Pet Supply* and *Wheeler*. (Mot. at PageID 75–76 (citing Compl. ¶¶ 9–12, 28–29, 31).) Plaintiffs cannot now retreat from these allegations. Indeed, plaintiffs fail to explain how these allegations do not entitle defendants to assert qualified immunity under the applicable analysis.

***Second***, plaintiffs' reliance on *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015), is misleading. (Opp. at PageID 107.) The Sixth Circuit has since explained that *Wesley*'s language regarding qualified immunity at the Rule 12 stage was "at best imprecise." *Crawford v. Tilley*, 15 F.4th 752, 763, 767–68 (6th Cir. 2021) (reversing district court's denial of qualified immunity at 12(b)(6) stage); *see also Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 466 (6th Cir. 2023) ("The Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (internal quotation marks omitted)); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").

Indeed, in *Crawford*, the Sixth Circuit observed that the Supreme Court "has not hesitated to affirm the dismissal of a lawsuit on qualified immunity grounds without mentioning any presumption against doing so." *Id.* at 764 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680–82 (2009), and *al-Kidd*, 563 U.S. at 744). So where, as here, a § 1983 complaint is "distinguishable from [the Sixth Circuit's] past cases on its face," it "will not often survive a motion to dismiss on qualified immunity grounds." *Id.* at 766; *see also al-Kidd*, 563 U.S. at 741 (granting qualified immunity at 12(b)(6) stage because, at the time of the relevant incident, "not a single judicial opinion had held" the defendant's alleged conduct unconstitutional).

***Third***, plaintiffs do not identify a Supreme Court decision or published Sixth Circuit decision clearly establishing that defendants' alleged "actions were unconstitutional *under the specific circumstances they encountered*"—which they must do to satisfy their burden on the "clearly established" element of qualified immunity. *Bell v. City of Southfield*, 37 F.4th 362, 367–68 (6th Cir. 2022) (emphasis added).

As to their Fourth Amendment excessive force claim, plaintiffs rely largely on unpublished Sixth Circuit decisions and district-court decisions (Opp. at PageID 107–09)—which "do not clearly establish anything." *Bell*, 37 F.4th at 368. Plaintiffs also concede that the published Sixth Circuit decisions they do cite stand only for the general proposition that "[a] prohibition against the use of force on a non-resisting subject is a clearly established right." (Opp. at PageID 108.)

But plaintiffs may not "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Rather, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks omitted). And none of plaintiffs' cases involve conduct remotely similar to the conduct alleged here. For instance, the officers in *Grawey v. Drury* pepper sprayed and "twist[ed] the unconscious [plaintiff's] ankle while securing him to be handcuffed." 567 F.3d 302, 310 (6th Cir. 2009). The officers in *Laplante v. City of Battle Creek* and *Smoak v. Hall* used violent "takedown maneuvers" against the plaintiffs. 30 F.4th 572, 579 (6th Cir. 2022); 460 F.3d 768, 784 (6th Cir. 2006). And the officer in *Kent v. Oakland County* used a "taser in dart mode" against the plaintiff. 810 F.3d 384, 388 (6th Cir. 2016). In all of these cases, the defendant-officers personally applied force—substantial force, for that matter—against the plaintiffs.

Here, the conduct alleged by plaintiffs is a far cry from takedown maneuvers, pepper-spraying, tasing, and the like. There is no use of force by the officers and only momentary physical

contact with paint from a non-party contractor's paint sprayer. Plaintiffs allege that Officer Drumm actually advised plaintiffs that they would get paint on their bodies if they did not move. (Compl. ¶ 33.) Officers Bialosky and Jastatt did not take any specific action toward plaintiffs. (Opp. at PageID 98 (claiming that the officers merely "watch[ed] and tacit[ly] endorse[d]" the painters' actions).) And President Kaler and Chief Owens at most "instruct[ed]" the officers "on how to proceed." (*Id.* ¶ 31.)

Further, all of plaintiffs' cases involved straightforward, undisputed seizures. Here, by contrast, plaintiffs allege that the officers "declined" to "move" them from their position in front of the Spirit Wall and that Officer Drumm "advis[ed]" them to leave. (Compl. ¶¶ 32–33; *see also* Mot. at PageID 69–72 (explaining why plaintiffs fail to allege a seizure).) Accordingly, plaintiffs' cases fall short of clearly establishing the Fourth Amendment right they purport to invoke.

Plaintiffs' attempt to identify binding caselaw clearly establishing their purported First Amendment right also falls flat. Plaintiffs focus primarily on *Diei v. Boyd*—a case that addressed whether a ***public*** university could discipline a student for "social media posts" that "were unrelated to the [university] and caused no disruption." 116 F.4th 637, 646 (6th Cir. 2024). Indeed, *Diei* did not involve police-officer conduct at all and is therefore inapposite.

Likewise, none of plaintiffs' cases involved protest activity; these cases accordingly do not clearly establish a First Amendment right to protest (or "prevent" and "block" operations) on private university property. And none are based on retaliatory use of force, retaliatory failure to prevent force, or retaliatory "authorization" of force. *See Sevy v. Barach*, 815 F. App'x 58, 64 (6th Cir. 2020) (granting qualified immunity because it was "not clear whether [the plaintiff] even had a viable First Amendment claim on his excessive force retaliation theory, let alone whether his First Amendment rights were clearly established under existing law"); *see also Hoskins v. Withers*,

92 F.4th 1279, 1294 (10th Cir. 2024) (granting qualified immunity "based on the absence of any case law that would clearly establish a First Amendment violation from the retaliatory use of force").[3] As a result, these cases do not clearly establish that defendants' alleged conduct violated the First Amendment.

***Fourth***, plaintiffs do not even attempt to analyze qualified immunity "on a defendant-by-defendant basis," as they must. *Franz v. Oxford Cmty. Sch. Dist.*, 132 F.4th 447, 451 (6th Cir. 2025). Instead, they broadly assert that they have "pleaded a clearly established right to be free from excessive force by police officers," and that "Defendants' efforts to censor . . . the First Amendment expression of Plaintiffs as they stood before the Spirit Wall" violated their clearly established First Amendment rights. (Opp. at PageID 109, 111.)

But even if plaintiffs had identified binding, on-point caselaw (they do not and cannot), they would need to connect that caselaw to *each individual defendant's alleged conduct* to overcome qualified immunity. *Schulkers v. Kammer*, 955 F.3d 520, 533 (6th Cir. 2020) ("When determining whether defendants are entitled to qualified immunity, we do not lump together each of the relevant government actors. Rather, we assess each actor's liability on an individual basis." (internal quotation marks omitted)). Their failure to do so independently dooms their claims.

Accordingly, the Court should grant defendants qualified immunity and dismiss plaintiffs' claims. *See Chaney-Snell v. Young*, 98 F.4th 699, 710 (6th Cir. 2024) ("[w]hen qualified immunity bars a § 1983 claim, the court should dismiss the claim *with prejudice* to any later refiling").

[3] Plaintiffs cite only an Eighth Circuit decision for the proposition that excessive force can "provide [the] basis for [a] First Amendment retaliation claim." (Opp. at PageID 101 (citing *Burbridge v. City of St. Louis*, 2 F.4th 774, 782 (8th Cir. 2021)).) This citation is self-defeating because it illustrates that such a rule is not clearly established in the Sixth Circuit, as *Sevy* expressly recognized.

**B. Plaintiffs Misrepresent Defendants' Arguments and the Law Regarding the Fourth Amendment, Underscoring Their Failure to Plausibly Allege a Seizure.**

"A seizure can occur in one of two ways: (1) use of force with the intent to restrain; or (2) show of authority with acquisition of control." *Campbell v. Cheatham Cty. Sheriff's Dep't*, 47 F.4th 468, 476 (6th Cir. 2022). As defendants have explained, plaintiffs' factual allegations establish that defendants did not use force, did not manifest an intent to restrain plaintiffs, and did not order or force plaintiffs to move anywhere. (Mot. at PageID 69–72.) Plaintiffs thus fail to plausibly allege either type of seizure—a seizure by force or a seizure by control.

Moreover, plaintiffs misrepresent both (1) defendants' arguments concerning the Supreme Court's decision in *Torres v. Madrid*, 592 U.S. 306 (2021), and (2) the Sixth Circuit's decision in *Bennett v. City of Eastpointe*, 410 F.3d 810 (6th Cir. 2005).

Plaintiffs claim that defendants read *Torres* to mean that "no seizure ever occurs *unless* an officer manifests an intent to restrain the subject." (Opp. at PageID 96.) But defendants actually stated that, under *Torres*, a *seizure by force* "requires 'physical contact' that 'objectively manifests an intent to restrain.'" (Mot. at PageID 70 (quoting *Torres*, 592 U.S. at 317).) This is true. *See Torres*, 592 U.S. at 317. And courts have not "rejected" this "interpretation of *Torres*," despite plaintiffs' incorrect assertion to the contrary. (Opp. at PageID 96.)

Next, plaintiffs claim that "controlling Sixth Circuit precedent recognizes that the application of force is sufficient for [a] Fourth Amendment seizure whether it is used to *hold*, or *disperse*." (*Id.* at PageID 96–97 (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 834 (6th Cir. 2005).) Not so. The portion of *Bennett* on which plaintiffs rely was not addressing "the application of force" (or seizures by force) at all. Instead, it was addressing an alleged *seizure by control*. Specifically, in *Bennett*, an officer had allegedly "ordered [the plaintiff] to walk his bicycle out of Eastpointe back to Detroit, and then 'escorted' him there." 410 F.3d at 834. Yet the plaintiff did

"not allege that he was frisked" by the officer—or touched in any way. *Id.* So plaintiffs are incorrect to suggest that *Bennett* held "that application of force to disperse is as valid a Fourth Amendment seizure as application of force to detain." (Opp. at PageID 97.)

At bottom, plaintiffs attempt to mix and match elements of a seizure by force and a seizure by control to concoct a seizure unrecognized in the law. But plaintiffs are not entitled to do this, particularly given the strictures of qualified immunity. They must plausibly allege a seizure by force or a seizure by control. And they have not done so.

A seizure by force "requires," first and foremost, "the use of force." *Torres*, 592 U.S. at 317. But plaintiffs do not allege that a single defendant used force against any plaintiff. (*See* Compl. ¶ 35 (alleging painter referred to as "Doe" applied paint "to the bodies of Plaintiffs").) Plaintiffs seek to circumvent this pleading deficit by arguing that "the Officer Defendants, *via their agents*, applied force via paint to Plaintiffs in order to disperse their protest." (Opp. at PageID 97 (emphasis added).) But plaintiffs do not even attempt to allege facts establishing an agency relationship between the officers and "Doe." Nor would it make any difference if they did, as plaintiffs fail to cite any authority for the proposition that force applied via a defendant's "agent," and not via the defendant himself, can suffice to establish a seizure by force by the defendant.

Nevertheless, even if plaintiffs' unalleged "agency" theory of force were proper, it would not establish an "intent to restrain"—the second element of a seizure by force. *Torres*, 592 U.S. at 317. Plaintiffs recast this element as requiring only an intent to "control their movement." (Opp. at PageID 98.) But this distorts *Torres*. Plaintiffs do not identify a single case holding that a mere intent to control someone's movement meets the "intent to restrain" element of a seizure by force.

Nor do plaintiffs respond to the litany of post-*Torres* cases cited by defendants that have rejected this view. *See, e.g.*, *Puente v. City of Phoenix*, 123 F.4th 1035, 1052 (9th Cir. 2024) ("the

requisite intent to restrain is present only when the force applied objectively aims at detaining or confining the person"); *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255–57 (8th Cir. 2023) (no seizure where officers used force "only to compel departure from an area"); *Ferris v. District of Columbia*, 2023 WL 8697854, at *10–11 (D.D.C. 2023) (same). As these cases establish, force used to "prevent[]" plaintiffs "from maintaining their protest position at the Spirit Wall," (Opp. at PageID 98)—in other words, force used to disperse plaintiffs from this position—would not have manifested an intent to *restrain* plaintiffs.[4]

Meanwhile, as to a seizure by control, plaintiffs acknowledge that: (1) they were not "given any order to disperse" by any defendant (Opp. at PageID 97), (2) they were free to leave the Spirit Wall area (as Officer Drumm advised them to do), and (3) they were free to remain standing in front of the Spirit Wall (as they did). These facts distinguish plaintiffs' allegations from those in *Bennett*, where the plaintiff submitted to an officer's order to "walk his bicycle" to Detroit and was "escorted" by the officer there. 410 F.3d at 834.

*Bennett* involved a straightforward seizure by control: the officer restricted the plaintiff's freedom of movement by ordering him to move from one location to another, and the plaintiff submitted to this show of authority. Neither of these elements are present in plaintiffs' allegations. Indeed, plaintiffs' allegations are far more similar to the facts in *Ewolski v. City of Brunswick*—another case plaintiffs (tellingly) fail to address. 287 F.3d 492, 507 (6th Cir. 2002) (no seizure where plaintiffs had no reason "to believe that the police were preventing them from leaving the house," even though "the police exercised control over the environment").

[4] This argument also fails because plaintiffs' allegations establish that defendants did *not* "prevent[]" them "from maintaining their protest position at the Spirit Wall." (Opp. at PageID 98.) Indeed, plaintiffs allege that the officers "declined" to "move [them]" from this position and that they "remained" in this position during and after the painting. (Compl. ¶¶ 32, 36.)

### C. Plaintiffs' First Amendment Retaliation Claim Is Defective.

Plaintiffs acknowledge that they must plausibly allege that they were engaged in "constitutionally protected speech" to state a First Amendment retaliation claim. (Opp. at PageID 99.) Yet plaintiffs say they were engaged in a political protest on CWRU's private property (*id.* at PageID 100–01)—speech that is plainly *unprotected* by the First Amendment. *See Reform America v. City of Detroit*, 37 F.4th 1138, 1153 (6th Cir. 2022) (no First Amendment right to protest on private property).

In response, plaintiffs assert—without citing any authority—that "the location of [their] protest" is "irrelevant" because "the retaliation doctrine addresses . . . whether government officials punished citizens for engaging in speech." (Opp. at PageID 101–02.) But this formulation of the First Amendment retaliation doctrine is incomplete. As plaintiffs elsewhere acknowledge (*id.* at PageID 99), they must allege that they were engaged in *constitutionally protected* speech—not just any speech. Thus, where the speech at issue is a protest, a First Amendment retaliation plaintiff must allege "that the First Amendment protected his presence at the protest." *Hall v. Navarre*, 118 F.4th 749, 759 (6th Cir. 2024). And here, because the Spirit Wall was on CWRU's private campus, plaintiffs must satisfy the elements of the state-action and public-forum doctrines—something plaintiffs cannot do.[5]

In other words, plaintiffs' theory that defendants "triggered" the First Amendment has it backwards. (Opp. at PageID 101.) It is *plaintiffs* who must "trigger" the First Amendment by engaging in constitutionally protected conduct to begin with, *before* defendants allegedly retaliated

---

[5] In response to defendants' state-action argument, plaintiffs stress that the officers acted "under color of state law for purposes of section 1983"—an issue not raised in defendants' motion. (Opp. at PageID 102–03.) Whether the officers acted under color of state law says nothing about whether plaintiffs' purported protest in front of the Spirit Wall was protected by the First Amendment. Defendants' state-action argument addresses the latter issue, not the former issue.

against them. *See, e.g.*, *Hall*, 118 F.4th at 759; *McElhaney v. Williams*, 81 F.4th 550, 557 (6th Cir. 2023) (for First Amendment retaliation claims, courts "ask whether any reasonable official would have understood that [the plaintiff's] speech was protected, and thus that the official could not retaliate against him"); *Ellsworth v. City of Lansing*, 2000 WL 191836, at *3 (6th Cir. Feb. 10, 2000) ("If the picketers' blockage of the gate was not protected by the First Amendment, their First Amendment rights simply could not have been infringed by a release of tear gas designed to unblock the gate."). And again, a protest on private property is unprotected. *Reform America*, 37 F.4th at 1153; *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 812 (2019).

Moreover, all this assumes that plaintiffs plausibly alleged that they were engaged in conduct that would have been constitutionally protected on public property. But as defendants explained in their motion, plaintiffs allege that they stood in front of the Spirit Wall to "prevent" and "block" the painters from painting the Spirit Wall (Compl. ¶¶ 4, 30)—conduct that the Sixth Circuit has held to be unprotected. *See Ellsworth*, 2000 WL 191836, at *3 ("picketers had no First Amendment right to block the gate"). In response, plaintiffs ignore these allegations and suggest that, so long as their conduct "express[ed] some message beyond" the conduct itself, it is entitled to First Amendment protection. (Opp. at PageID 100.) But that is not the law. Just as the picketers' message in *Ellsworth* did not entitle them to block a gate, plaintiffs' message here did not entitle them to block the painters from painting the Spirit Wall.[6]

Finally, plaintiffs miss the mark on causation. They argue that "[t]he fact that the University decided in advance to paint over a wall does not negate Plaintiffs' claim." (Opp. at PageID 104.) But this argument contravenes the holding of *Susselman v. Washtenaw Cty.*

[6] If the Court is inclined to accept plaintiffs' characterization of their conduct as "political speech" (Opp. at PageID 101), such conduct would still be unprotected for all of the other reasons discussed in this section and in defendants' motion.

*Sheriff's Office*—yet another case ignored by plaintiffs. 109 F.4th 864 (6th Cir. 2024). In *Susselman*, causation was lacking because the defendant decided to take the alleged adverse action before the plaintiff engaged in purported protected conduct. *Id.* at 871–72. So too here. Plaintiffs accuse defendants of "supervisi[ng] and authoriz[ing]" the painting. (Compl. ¶ 35.) Yet plaintiffs' allegations establish that defendants had decided to supervise and authorize the painting because they found the Spirit Wall mural to be inappropriate—not because of plaintiffs' alleged conduct (which had yet to occur when "CWRU determined to paint"). (Compl. ¶¶ 23–28.)[7] That plaintiffs later decided to stand in front of the Spirit Wall does not change the impetus of this decision.

### D. Qualified Immunity Would Defeat Plaintiffs' Proposed Substantive Due Process Claim, Making It Futile.

Recognizing the infirmities of their Fourth Amendment and First Amendment theories, plaintiffs alternatively seek to amend their complaint to include a substantive due process claim under the Fourteenth Amendment. (Opp. at PageID 104–06.) But as with plaintiffs' original claims, a substantive due process claim would warrant dismissal on qualified-immunity grounds, making plaintiffs' proposed amendment futile. *See Franz*, 132 F.4th at 451–53. Indeed, plaintiffs do not even attempt to argue that binding caselaw clearly establishes that defendants' alleged conduct constituted "arbitrary and capricious governmental action that 'shocks the conscience and violates the decencies of civilized conduct.'" *Guertin v. Michigan*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). That is because no such caselaw exists. Thus, plaintiffs cannot salvage their complaint with a substantive due process

---

[7] Given these allegations, plaintiffs cannot avoid dismissal by speculating that defendants "used the painting process to target Plaintiffs for their protest." (Opp. at PageID 104.) *See Susselman*, 109 F.4th at 872 (affirming dismissal of First Amendment retaliation claim where the plaintiff "offer[ed] nothing more than speculation to support" that the defendant acted "in retaliation").

claim. *See Reno v. Flores*, 507 U.S. 292, 303 (1993) (a claim's "novelty" "is reason enough to doubt that 'substantive due process' sustains it").[8]

**CONCLUSION**

The Court should dismiss the complaint with prejudice.

Respectfully submitted,

/s/ *Carole S. Rendon*
Carole S. Rendon (0070345)
Karl Fanter (0075686)
Douglas L. Shively (0094065)
Matthew C. Borcas (103760)
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
Telephone: 216.621.0200
Facsimile: 216.696.0740
crendon@bakerlaw.com
kfanter@bakerlaw.com
dshively@bakerlaw.com
mborcas@bakerlaw.com

*Attorneys for Defendants*

[8] In addition, plaintiffs' request to amend is improper "because they did not attach a copy of their [proposed] amended complaint" to their opposition brief. *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (affirming denial of request to amend for this reason).

**PAGE-LIMIT CERTIFICATION**

Pursuant to Local Rule 7.1(f), I certify that this reply brief adheres to the 20-page limitation for unassigned cases.

/s/ *Carole S. Rendon*
*Attorney for Defendants*