**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AMEER ALKAYALI, et al.,** | ) | **CASE NO. 1:25CV983** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **ERIC KALER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #11) of Defendants Eric

Kaler, Paul Owens, Kurtis Bialowsky, Milo Drumm and Michael Jastatt to Dismiss the

Complaint of Plaintiffs Ameer Alkayali, Weillin Feng and Kevin Kennelly.  For the following

reasons, the Motion to Dismiss is granted.

## I. FACTUAL BACKGROUND

On May 7, 2024, Plaintiffs gathered to protest near a mural on the "Spirit Wall" on the

Case Western Reserve University ("CWRU") campus.  The "Spirit Wall" had been painted by

students with expressions of support and solidarity with Palestinians "facing mass murder, brutal

violence, and mass displacement as a result of Israeli military operations in the Gaza Strip."

(Complaint, ECF DKT #1, ¶ 1).  Defendant Kaler, CWRU's President, declared that the

messages in the mural constituted expressions of antisemitism; and Kaler hired painters to paint

over the "Spirit Wall."  Plaintiffs allege Kaler intended to censor the Pro-Palestinian messages on

the wall.  (*Id.*, ¶ 3).  As Plaintiffs gathered in front of the Spirit Wall to prevent the painters from

censoring its message, Defendant CWRU police officers Bialowsky, Drumm and Jastatt, at the

instruction of Kaler and Defendant Owens, chief of the CWRU police, directed the painters to paint over the Plaintiff protesters, coating their bodies with toxic spray paint from industrial spray-painting machines.  "These actions by CWRU officials, acting under color of Ohio law, constitute clear and egregious violations of Plaintiffs' rights to free expression under the First Amendment, and to be free from the use of excessive force by government agents.  Kaler, Owens, and the responsible CWRU Police officers who acted at their instruction are therefore all liable to Plaintiffs for the unlawful deprivation of Plaintiffs' constitutional rights under the First and Fourth Amendments to the U.S. Constitution."  (*Id.*, ¶ 5).

Defendant Kaler is President of CWRU, a private university and an Ohio not-for-profit corporation.  Kaler is sued in his individual and official capacity.  (*Id.*, ¶ 8).

Defendant Owens, as chief of the CWRU police, operated with full legal authority to enforce the laws of the City of Cleveland and the State of Ohio and was responsible for training and supervising the CWRU officers.  He is sued in his individual and official capacity. (*Id.*, ¶ 9).

Defendants Bialowsky, Drumm and Jastatt acted under color of state law as Ohio peace officers and are sued in their individual capacities.  Cleveland Division of Police General Order 4.03.04 provides that CWRU officers have the same authority as Division officers on property expressly owned, leased, or contracted by the University.  (*Id.*, ¶ 28).

Plaintiffs assert the First Cause of Action for Excessive Force under the Fourth Amendment and 42 U.S.C. § 1983 against all Defendants in their individual capacities.  That is: Defendants caused, authorized, and ratified the painters' actions in physically attacking and battering Plaintiffs by coating their bodies with toxic spray-paint in knowing violation of Plaintiffs' Fourth Amendment right to be free from excessive force.  The painters would not have

taken these actions if not for the Defendants' conduct, which was taken under color of state law and within the scope of their duties as law enforcement officers or executives with supervisory power and authority over law enforcement officers and which was objectively unreasonable in the circumstances. (*Id.*, ¶ 58).

The Second Cause of Action alleges Retaliation under the First Amendment and 42 U.S.C. § 1983 against all Defendant in their individual capacities. Plaintiffs allege that they were engaged in First Amendment-protected conduct when they stood in front of the "Spirit Wall" to prevent it from being repainted; and that they had a well-established right to protest on a university campus in an area designated as a forum for such activity. Defendants were acting under color of law. Defendants authorized, approved and knowingly acquiesced in the painters' spraying paint over Plaintiffs' bodies and were motivated in substantial part by a desire to punish Plaintiffs for exercising their First Amendment rights. (*Id.*, ¶¶ 63-65).

Plaintiffs allege that the Court possesses federal question jurisdiction and supplemental jurisdiction over related state claims. The Court notes that the Complaint contains no state law claims.

Defendants move for dismissal because Plaintiffs fail to plead plausible constitutional violations of the First and Fourth Amendments to the U.S. Constitution; and alternatively, Defendants contend that they are entitled to qualified immunity.

At the outset, the Court will address Plaintiffs' request for permission to amend their Complaint. Plaintiffs suggest that "if the Court were to conclude that Plaintiffs' allegations do not fit neatly within the First or Fourth Amendments," they should be permitted to amend and expressly plead a Substantive Due Process claim under the Fourteenth Amendment.

-3-

However, the Court adheres to the Sixth Circuit's guidance that a plaintiff must properly file a motion for leave to amend and cannot merely insert such a request in a brief in opposition. *Prim Capital Corp. v. Pippen*, No. 1:09CV561, 2009 WL 2579810, *2 (N.D. Ohio Aug. 19, 2009) (citing *Begala v. PNC Bank, Ohio N.A.*, 214 F.3d 776, 784 (6th Cir. 2000). The policy behind this is that district courts should not stand to "rescue" plaintiffs from the deficiencies of their complaints by offering leave to amend when plaintiffs do not properly request leave. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008). Where Defendants point out the deficiencies of Plaintiffs' Complaint, Plaintiffs should not have the benefit of being rescued by the Court merely because they have now become aware of these deficiencies. The Court denies Plaintiffs' request for leave to amend in order to add a totally new Fourteenth Amendment Due Process claim.

## II. LAW AND ANALYSIS

### Standard of Review - Fed.R.Civ.P. 12(b)(6)

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

-4-

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662 at 678 (2009) (citing *Twombly*, 550 U.S. at 570).  While the

Court must accept all well-pleaded factual allegations as true, it need not "accept as true a legal

conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v.*

*Allain*, 478 U.S. 265, 286 (1986)).  The complaint need not contain "detailed factual allegations,"

but must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A pleading that offers "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid

of "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

## 42 U.S.C. § 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State ..., subjects, or causes to be subjected, any ... person ... to the
> deprivation of any rights ... secured by the Constitution and laws [of the United
> States], shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress[.]

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48, 108

S.Ct. 2250, 101 L.Ed.2d 40 (1988).

## State Action/State Actor

A plaintiff invoking § 1983 must establish that the defendant was acting "under the color

of state law" and deprived the plaintiff of "rights secured by federal law."  *League of Women*

*Voters v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008) (internal citations omitted).  An individual

acts under color of state law, as required by § 1983, when he has "exercised power possessed by

virtue of state law and made possible only because the wrongdoer is clothed with the authority of

state law."  *Dean v. Byerley*, 354 F.3d 540, 552 (6th Cir. 2004) (cleaned up) (quoting *West v.*

*Atkins*, 487 U.S. at 49).  That is, "[i]f an individual is possessed of state authority and purports to

act under that authority, his action is state action."  *Id*. at 552 (quoting *Griffin v. Maryland*, 378

U.S. 130, 135 (1964)).

Private parties are liable under § 1983 only if they are "state actor[s]" that operated under

"under color of law" such that their "private conduct is fairly attributable to the state."

*Moldowan v. City of Warren*, 578 F.3d 351, 399-400 (6th Cir. 2009).

**Individual Defendants**

"It is a basic pleading essential that a plaintiff attribute factual allegations to particular

defendants."  *Davis v. Michigan Dep't of Corr. Bureau of Health Care Servs*., No. 2:13-CV-253,

2013 WL 4829977, at *4 (W.D. Mich. Sept. 10, 2013), citing *Twombly*, 550 U.S. at 544

("holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a

defendant fair notice of the claim).  Where a person is named as a defendant without an

allegation of specific conduct, the complaint is subject to dismissal, even under the liberal

construction afforded to pro se complaints."  *Davis*, 2013 WL 4829977, at *4, citing *Frazier v.*

*Michigan*, 41 F. App'x 762, 764 (6th Cir.2002).

**Fourth Amendment**

The Fourth Amendment protects individuals from "unreasonable searches and seizures."

U.S. Const. amend. IV.  It is clearly established that "not all personal intercourse between

policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1 at 19, n. 16 (1967).  As a general rule, only when a police officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen may [the Court] conclude that a 'seizure' has occurred." *Id*.  As cited in *Lawson v. Creely*, 137 4th 404 (6th Cir. 2025), a Fourth Amendment seizure occurs "when, 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *United States v. Knox*, 839 F.2d 285, 289 (6th Cir. 1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)); see also *Florida v. Bostick*, 501 U.S. 429, 434, 437 (1991) (reframing the inquiry as whether "a reasonable person would feel free 'to disregard the police and go about his business' " or "ignore the police presence").  A seizure can occur in one of two ways:  (1) use of force with the intent to restrain; or (2) show of authority with acquisition of control.  *Campbell v. Cheatham Cty. Sheriff's Dep't*, 47 F.4th 468, 476 (6th Cir. 2022) (citing *Torres v. Madrid*, 592 U.S. 306, 317, 322 (2021)).

**First Amendment/Retaliation**

The First Amendment prohibits state actors from "abridging the freedom of speech ... or the right of the people ... to petition the Government for a redress of grievances."  U.S. Const. amend. I.

"By contrast, when a private entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor.  The private entity may thus exercise editorial discretion over the speech and speakers in the forum." *Manhattan Community Access Corporation v. Halleck*, 587 U.S. 802, 812 (2019).  "Providing some kind of forum for speech is not an activity that only governmental entities have traditionally

performed."  *Id*.  "In short, merely hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints."  *Id*.

A First Amendment retaliation claim has three elements:  "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018).

## Defendant Eric Kaler

These are Plaintiffs' allegations against Kaler:

- Kaler, CWRU's President, has a well-documented history of discriminating against students who express their First Amendment rights to criticize the Israeli government.  Kaler is sued in his individual and official capacity as the president of a private university and non-profit corporation.  Kaler entered into a contract with a painting company and hired painters to paint over the "Spirit Wall" to censor pro-Palestinian messages.  Kaler and Defendant Owens instructed the CWRU police officers to direct the painters to spray-paint over the protesters.  Kaler emailed the students on May 7, 2024, saying the language of the mural on the "Advocacy Wall" and "Spirit Wall" was threatening, intimidating and antisemitic.  Defendant police officers spoke "over radio or phone with Kaler, Owens, and/or agents of Kaler or Owens to receive instructions on how to proceed."  Kaler pursued policies which censored pro-Palestinian viewpoints such as those depicted in the mural.  Kaler viewed video footage of the spray-painting incident, was disturbed by it, expressed sorrow that students were treated this way and vowed to

investigate and hold individuals responsible. The "Spirit Wall" was specifically designated by CWRU policy as a forum for First Amendment-protected expressive conduct. Kaler, as the ultimate decisionmaker regarding CWRU policy, acted under color of Ohio law to deprive Plaintiffs of their constitutional rights.

The Court finds that these allegations are insufficient to impose liability upon Kaler or CWRU for violation of Plaintiffs' First and Fourth Amendment rights under 42 U.S.C. § 1983. Neither Kaler nor CWRU are state actors, despite Plaintiffs bare allegations otherwise. A private not-for-profit corporation is not a state actor, even when it may be subject to state and federal regulation. *Adams v. Vandemark*, 855 F.2d 312 (6th Cir.1988). Regarding the First Amendment it bears repeating: "Providing some kind of forum for speech is not an activity that only governmental entities have traditionally performed. Therefore, a private entity who provides a forum for speech is not transformed by that fact alone into a state actor." *Manhattan Community Access, supra.* By designating the "Advocacy Wall" or "Spirit Wall" as areas available to students to advocate for issues important to them, CWRU and Kaler did not become state actors.

There are no facts showing that Kaler possessed state authority or acted under such authority in May of 2024. Kaler and/or the University entered into a private contract with a private company to paint the walls on campus. The painters, not state actors, painted over the Plaintiffs. Moreover, Kaler's individually-held views or actions based on those views, even if considered intolerant or discriminatory toward pro-Palestinian viewpoints, are not attributable to the state.

A Section 1983 claim cannot stand against Kaler in his individual or official capacity as to a First or Fourth Amendment violation.

**Defendant Paul Owens**

Plaintiffs' Complaint plausibly alleges that Paul Owens, as Chief of the CWRU Police, is a state actor.  Owens and his officers are considered Ohio peace officers and are granted the same authority as the Cleveland Division of Police on CWRU property.  Owens reports directly to Kaler and enforces Kaler's policies.  However, Owens was not present at the "Spirit Wall" on May 7, 2024.

A liberal reading of the Complaint shows that Owens allegedly ordered the painters to paint over the Plaintiffs with toxic paint, or provided instructions to the officers over phone or radio to direct the painters to spray-paint over the Plaintiff protesters standing in front of the wall. (Complaint, ECF DKT #1, ¶¶ 31, 34).  Owens "authorized, caused and ratified the actions of the painters." (*Id.*, ¶ 53).  Owens acted under color of law at all relevant times.

Plaintiffs allege that Owens supervised the CWRU police officers.  "An official cannot be held liable for the constitutional violations of subordinates under a theory of respondeat superior, meaning that [he] "cannot be held liable simply because ... [he] was charged with overseeing" subordinate officers who violated the plaintiff's constitutional rights." *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025) quoting *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). A complaint must plead that the official violated the Constitution through his own actions. *Iqbal*, 556 U.S. at 677.  "[A] mere failure to act will not suffice to establish supervisory liability" in the context of a constitutional claim." *Peatross*, 818 F.3d at 241.  "[A]t a minimum, the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the **offending officers**." *Id.* (Emphasis added). (internal quotation marks omitted).  "A supervisory official's failure to supervise, control, or train

an offending subordinate is not actionable without this minimum showing." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

To hold a supervisor-defendant liable for a violation of a plaintiff's constitutional rights, there also needs to be "a causal connection between the defendant's wrongful conduct and the violation alleged." *Venema, id.*; *Peatross*, 818 F.3d at 242. A causal connection is established when the supervisor's conduct, or lack thereof, "could be reasonably expected to give rise to just the sort of injuries" that a plaintiff alleges have occurred. *Venema, id.*; *Campbell v. City of Springboro*, 700 F.3d 779, 790 (6th Cir. 2012).

Undefined instructions which may have come from "Kaler, Owens, and/or agents of Kaler or Owens" on how to proceed (Complaint, ¶ 31) are too tenuously connected to the injuries claimed by Plaintiffs. The alleged conduct of Defendant Owens in "authorizing, causing or ratifying" the actions of the painters (non-state actors) does not meet the standard for official or individual supervisor liability for constitutional violations pursuant to § 1983.

Plaintiffs must plead how each Defendant violated the Constitution; and Plaintiffs' Complaint fails to demonstrate that they are entitled to relief under the First or Fourth Amendment against Defendant Owens.

**Defendant Kurtis Bialowsky and Defendant Michael Jastatt**

Plaintiffs sue Defendant Bialowsky and Defendant Jastatt in their individual capacities and allege that they acted under color of state law as Ohio peace officers and members of the CWRU police force. Aside from describing them as Party Defendants in the introductory paragraphs and placing them at the "Spirit Wall" in the early morning hours of May 7, 2024, Plaintiffs only refer to the conduct of "Officer Defendants" or "CWRU Officer Defendants"

collectively throughout the Complaint.  Without attributing specific factual allegations to

Bialowsky and Jastatt particularly, Plaintiffs' Complaint as to them is subject to dismissal.  The

Court therefore holds that the Motion to Dismiss is granted as to Defendant Kurtis Bialowsky

and Defendant Michael Jastatt.

**Defendant Milo Drumm**

Plaintiffs sue Defendant Drumm in his individual capacity and allege that he was

employed as a peace officer and acted under color of state law.  Drumm was present at the "Spirit

Wall" on the morning of May 7, 2024.  Drumm and the other CWRU officers "declined" to move

the Plaintiffs, who were standing within inches of the wall.  Drumm allegedly said:  "[I]f they

don't move, it's on them" and  "[W]e're just advising then that they're gonna get paint on 'em ...

we're just here."  Drumm "advised Plaintiffs not to touch the paint sprayers, as they were

dangerous."  (Complaint, ¶ 33).  Defendant officers allegedly seized or applied force against

Plaintiffs "by ordering the painters to paint over the Plaintiffs."  (*Id*., ¶ 34).  Defendant officers

"did nothing to protect the Plaintiffs from being sprayed by CWRU's painters."  (*Id*., ¶ 37).  This

conduct was allegedly consistent with CWRU's policy of using physical force to remove student

protesters and equating pro-Palestine support with antisemitism to justify the use of such force.

(*Id*., ¶ 38).  At ¶ 51:  Defendant officers "not only failed to prevent the painters from spray-

painting over the Plaintiffs, they expressly authorized the painters to physically assault Plaintiffs

with spray-paint" ... "allowing their First-Amendment protected protest activity to be chilled by

threats of violence."  Defendants' actions "were motivated in substantial part by a desire to

punish the Plaintiffs for exercising their First Amendment rights."  (*Id.*, ¶ 64).

Even reading Plaintiffs' Complaint most generously, the allegations involving Defendant

Drumm fare no better against Defendants' Rule 12(b)(6) challenge than the claims against the other Defendants.

A Fourth Amendment seizure occurs when a defendant restrains a plaintiff's liberty by means of physical force or a show of authority. *Terry; Lawson v. Creely, supra.* There is no plausible allegation that Drumm exercised physical force against Plaintiffs nor that he used the authority of his badge or uniform to control Plaintiffs by compelling them to leave or to remain.

First Amendment Retaliation requires a showing that Plaintiffs engaged in protected conduct, that an adverse action was taken against them; and that the adverse action was motivated at least in part by Plaintiffs' protected conduct. *Maben v. Thelen, supra.* Plaintiffs were protesting the obliteration of the mural on the "Spirit Wall;" and Plaintiffs suffered an adverse action by being painted over with toxic paint. As against Defendant Drumm, however, the First Amendment Retaliation analysis ceases to apply at this juncture. Drumm did not wield the paint sprayer and did not himself take adverse action against Plaintiffs. In addition, none of Plaintiffs' allegations allow the Court to make a plausible inference that Drumm was motivated to punish Plaintiffs for the exercise of their free speech and free expression rights.

Plaintiffs further assert that Defendant Drumm failed to protect them or to intervene on their behalf in this incident. These assertions do not alter the Court's calculus that constitutional violations are absent.

Defendant Drumm was not constitutionally required to intervene when force was applied against Plaintiffs by a third-party private actor. Plaintiffs may only challenge the officer's own individual conduct under § 1983. As a rule under § 1983, a plaintiff may not hold one officer liable for another's actions. *Chaney-Snell v. Young*, 98 F.4th 699, 721 (6th Cir. 2024). Mere

presence at the scene of excessive force does not suffice to hold an officer liable.  *Id.; Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).  If beyond that, Plaintiffs cannot show that **any officer** used excessive force in the first instance, then nothing triggers a duty to intervene.  *Hunt v. Sunquist*, 822 F.App'x 468, 479 (6th Cir. 2020).

It is equally true that a failure to protect an individual against private violence is not a constitutional violation.  Most constitutional claims necessitate that a state actor take some affirmative action that directly causes the harm.  See, *e.g. County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998); *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189 (1989).  In its research, the Court identified a case with a fact pattern that may provide a helpful analogy:  A federal district court in Kentucky found that when an officer ordered a tow truck to drive off while an apparently intoxicated person sat on top of a car, that officer's conduct was unwise, tortious and possibly illegal.  However, the Constitution was not determined to be the source of a remedy for that wrong, nor for every wrong.  *Boerste v. Ellis Towing*, LLC, 607 F.Supp.3d 721, 744 (W.D. Kentucky 2022).

The Court holds that Plaintiffs are unable to maintain their claims for First Amendment Retaliation and Fourth Amendment Excessive Force against Defendant Drumm.

### III. CONCLUSION

Since the Court finds that Plaintiffs' Complaint fails to allege sufficient facts to state any constitutional claims against Defendants in their individual or official capacities, the Court need not address Defendants' qualified immunity defense.  See *Warmus v. Hank*, Nos. 93-1619, 93-1620, 1995 WL 82061 *4 (6th Cir. Feb. 28, 1995) (recognizing that if the plaintiff has failed to state an actionable claim then the issue of defendant immunity becomes moot).

For all these reasons, the Motion (ECF DKT #11) of Defendants Eric Kaler, Paul Owens, Kurtis Bialowsky, Milo Drumm and Michael Jastatt to Dismiss the Complaint of Plaintiffs Ameer Alkayali, Weillin Feng and Kevin Kennelly is granted.

**IT IS SO ORDERED.**

**DATE: March 5, 2026**

         **s/Christopher A. Boyko**
         **CHRISTOPHER A. BOYKO**
         **UNITED STATES DISTRICT JUDGE**